UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL JEAN-LOUIS,                    )
              Petitioner             )
v.                                    )        C.A. No. 05-11274-DPW
                                      )
UNITED STATES OF AMERICA              )        (Crim. No. 00-10234-DPW)
Defendant                             )
                                      )

## GOVERNMENT'S OPPOSITION TO
## PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The United States, by and through Michael J. Sullivan,
United States Attorney, and the undersigned Assistant United
States Attorney, (hereinafter, the "government"), opposes
Petitioner's Motion filed pursuant to 28 U.S.C. § 2255
(hereinafter "Petitioner's Motion"), and files this Memorandum is
support of its opposition.  The gravamen of Petitioner's motion
is that his sentence must be vacated because he did not
understand that his conviction carried with it potential
immigration consequences, including deportation from the United
States.  Petitioner's Motion is untimely, procedurally barred and
fails on the merits, as he was repeatedly advised of the
immigration consequences he faced.

### Facts And Procedural History

Petitioner was charged in a one-count Information filed on
July 6, 2000, with conspiracy to commit bank fraud in violation
of 18 U.S.C. § 371.  On July 20, 2000, Petitioner signed a plea
agreement with the government, waived indictment and entered a

-1-

guilty plea to the single-count information before this Court
(Woodlock, D.J.).  A copy of the plea agreement is appended here
as Exhibit A.[1]   Paragraph 2 of the plea agreement, found at
pages 1 and 2, reads as follows:

> Defendant faces the following maximum
> penalties: five years' imprisonment, a
> $250,000 fine, three years' supervised
> release; a mandatory $100.00 special
> assessment; and restitution in the amount of
> $12,869.01.
>
> **Defendant may also be deportable and/or
> excludable by the United States Immigration
> and Naturalization Service as a consequence
> of his conviction of the offense to which he
> is pleading guilty.**

(Emphasis supplied).  Both Petitioner and his counsel certified
to the Court that Petitioner had had the plea agreement read to
him in his native language (Haitian Creole), and that he
understood the terms of the agreement.  Plea Agreement, pp. 6-7.
At the change of plea hearing, Petitioner further stated in open
court that he had had adequate time to review the plea agreement
with his counsel.  July 20, 2000 transcript, attached as Exhibit
B, at 4-5.  The change of plea proceedings were translated into
Haitian Creole by court-certified interpreter Vignoble Silvester.
July 20, 2000 transcript at 2.  During that hearing, Petitioner

---

[1]    The appended copy is unsigned.  Undersigned counsel
does not have available a signed copy of the agreement, but the
original, fully-executed agreement is filed as Docket entry 15 in
the Court's file.  From the Court's Rule 11 colloquy, it appears
that the plea agreement was signed on the day of the change of
plea.  July 20, 2000 Hearing Transcript at 4.

-2-

also stated that he understood that pleading guilty could affect

his immigration status.  July 20, 2000 transcript at 10.  Based

on a full colloquy, the Court found the waiver of indictment and

decision to plead guilty was knowing, voluntary and supported by

substantial evidence.  July 20, 2000 transcript at 15.

Petitioner was sentenced on November 15, 2000.  The

sentencing proceedings were translated into Haitian Creole by

court-certified interpreter Vignoble Silvester.  November 15,

2000 hearing transcript, attached as Exhibit C, at 1.  In

conjunction with making the government's recommendation of a

sentence of straight probation for three years, no fine,

imposition of restitution in the amount of $12,869.01, and

imposition of a $100.00 mandatory special assessment, undersigned

counsel for the government added:

> .... At the same time, Your Honor, the Court is aware
> that Mr. Jean-Louis is not an American citizen.  He
> does face the possibility that he would be deported
> from the United States.  In fact, that may be the most
> significant aspect and the most significant portion or
> most significant possibility of punishment.  That's
> obviously not for my office to determine, but rather
> that will be left for INS how it decides to pursue that
> matter.  But it is a very real possibility for him.

November 15, 2000 hearing transcript, attached as Exhibit C, at

6-7.

Thereafter, Petitioner's counsel added:

> .... And it is true my client is an immigrant who's
> from Haiti.  He's been here since 1991.  He does face a
> potential or possibility of deportation meaning he can
> never come back to this country, at least subject to

-3-

> the immigration laws for a period of at least ten
> years, if not indefinitely.

November 15, 2000 hearing transcript at 6-7.

The Court imposed the sentence jointly recommended by the
parties, and added a requirement that Petitioner perform 250
hours of community service during the first two years of
probation.  November 15, 2000 hearing transcript at 8-10.  In
imposing special conditions of release, the Court ordered in
relevant part as follows:

> He is obligated, if ordered deported, to leave the
> United States promptly and not to return without prior
> permission of the Attorney General.

November 15, 2000 hearing transcript at 9-10.

That special condition was reiterated in the Judgment and
Conviction, docketed on November 21, 2000 [Docket No. 20] and
attached as Exhibit D, at 6, Item 11; as well as on the revised
judgment upon revocation of probation and re-sentencing, docketed
on June 6, 2001 [Docket No. 27] and attached as Exhibit E, at 4,
Item 11; and on the revised judgment upon revocation of probation
and re-sentencing, docketed on June 30, 2004 [Docket No. 33] and
attached as Exhibit F, at 4, Item 12.

## ARGUMENT

### A.   The Motion Is Untimely

Petitioner's Motion is untimely, because his conviction
became final not later than November 21, 2000, the date of
docketing of the Judgment and Conviction. [Docket No. 20]. No

-4-

appeal was taken, and no other event served to toll the limitations period. Accordingly, pursuant to 28 U.S.C. § 2255(1), Petitioner's Motion is untimely. By November 21, 2000, the fact that he faced potential deportation had been made explicit not less than four times; i.e., by the government in the plea agreement, by the Court during the change of plea colloquy, by counsel for both parties and by the Court during the sentencing hearing; and by the Court in the Judgment and conviction papers. Thus, any purported claim was ripe by November 21, 2000. The petition comes too late.

### B. **The Claim Is Procedurally Defaulted**

Petitioner is procedurally barred from withdrawing his guilty plea on collateral review. Generally, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 622 (1998). There are two exceptions to this rule. Id. Under the first exception, a petitioner's procedural default is excused if he is actually innocent. Id. The second exception requires that a petitioner demonstrate cause and actual prejudice. Id.

Petitioner did not appeal his conviction or his sentence, and only sought to withdraw his guilty plea when he filed his petition on or about June 16, 2005. Thus, petitioner must satisfy one of the two exceptions to the procedural bar.

-5-

Petitioner does not satisfy the first exception because there is
no indication in the record that he is innocent.

Here, petitioner appears to rely on the second exception,
which requires a showing of cause and prejudice.  Petitioner
alleged that he was prejudiced by the deportation proceedings
following his guilty plea.  The record, however, simply does not
support a finding of prejudice.  In particular, there is no
evidence to suggest that petitioner would not have pled guilty if
he had been aware of the deportation consequences of his plea.
Rather, the record is replete with references to the possibility
that deportation could follow conviction.  Consequently,
petitioner has not demonstrated prejudice to excuse his
procedural default.  El-Nobani v. U.S., 287 F.3d 417, 420 (6th
Cir.), cert. denied, 537 U.S. 1024 (2002).

## C. **The Change Of Plea Was Knowing And Voluntary**

Even assuming that petitioner's claim was timely and was not
procedurally defaulted, petitioner may not withdraw his plea
because he has not shown that his plea was not voluntary and
knowing.  Bousley, 523 U.S. at 618.  Petitioner argues that his
lack of awareness of the deportation consequences and the
misrepresentations by the government as to his deportation
consequences make his pleas involuntary and unknowing.  A
"defendant need only be aware of the direct consequences of the
plea, however; the trial court is under no constitutional

-6-

obligation to inform the defendant of all the possible collateral consequences of the plea." King v. Dutton, 17 F.3d 151, 153 (6th Cir. 1994).

The United States Court of Appeals for the First Circuit, along with numerous other courts of appeals, has "held that deportation is only a collateral concomitant to criminal conviction." United States v. Gonzalez, 202 F.3d 20, 25 (1st Cir. 2000)(citing United States v. Quin, 836 F.2d 654, 655 (1st Cir. 1988)). A collateral consequence is one that "remains beyond the control and responsibility of the district court in which that conviction was entered." Id. at 27. Thus, even if true, "counsel's failure to advise a defendant of a collateral consequence is a legally insufficient ground for a plea withdrawal." Id. (citing United States v. George, 869 F.2d 333, 337 (7th Cir.1989)("While the Sixth Amendment assures an accused of effective assistance of counsel in 'criminal prosecutions,' this assurance does not extend to collateral aspects of the prosecution."); United States v. Cariola, 323 F.2d 180, 186 (3rd Cir. 1963)(finding "no basis for holding that the finality of a conviction depends upon a contemporaneous realization by the defendant of the collateral consequences of his plea"); United States v. Parrino, 212 F.2d 919, 921-922 (2nd Cir. 1954)(same)).

The First Circuit continued:

> In Quin, the defendant had "waived jury and
> acceded to a bench trial in ignorance of the

deportation consequences of a guilty finding due to the
failure of his counsel to inform him thereof;
[defendant argued] that this constituted
constitutionally ineffective counsel, and that he [was
thus] entitled to start over." Quin, 836 F.2d at 655.
We disagreed, noting that as a "collateral consequence"
of conviction, deportation was "legally irrelevant,
even as to an outright guilty plea." Id.; see also
George, 869 F.2d at 337 ("A deportation proceeding is a
civil proceeding which may result from a criminal
prosecution, but is not a part of or enmeshed in the
criminal proceeding. It is collateral to the criminal
prosecution."); United States v. Yearwood, 863 F.2d 6,
7 (4th Cir. 1988) ("[A]n attorney's failure to advise a
client that deportation may result from a conviction
does not constitute ineffective assistance of
counsel."); United States v. Campbell, 778 F.2d 764,
766-67 (11th Cir.1985) (finding no attorney obligation
to inform client of plea's immigration consequences);
Sanchez v. United States, 572 F.2d 210, 211 (9th Cir.
1977) (same); Parrino, 212 F.2d at 921, 923 (2nd Cir.
1954) (holding that where evidence was clear that
defendant had asked counsel whether he could be
deported after pleading guilty, and counsel had
unequivocally, but erroneously, replied "no," counsel
had not been constitutionally ineffective and
withdrawal of guilty plea was not required).

Gonzalez, 202 F.3d at 25-26.  Thus, Petitioner's claim fails on

the merits.

### D.    No Hearing Is Required.

Petitioner is not entitled to an evidentiary hearing on this

Petition.  "While genuine issues of material fact may not be

resolved without a hearing, see Blackledge v. Allison, 431 U.S.

63, 80-81 (1977), a hearing is not necessary 'when a § 2255

motion (1) is inadequate on its face, or (2) although facially

adequate, is conclusively refuted as to the alleged facts by the

files and records of the case.'"  United States v. DiCarlo, 575

-8-

F.2d 952, 954 (1st Cir. 1978)(quoting Moran v. Hogan, 494 F.2d

1220, 1222 (1st Cir. 1974); see also Carey v. United States,

1097, 1098 (1st Cir. 1995).

## CONCLUSION

Petitioner's claim that his guilty plea was not knowing or

voluntary is time-barred because not raised within one year of

the date upon which his conviction became final.  Further, the

claim is procedurally barred because petitioner did not raise

this claim on direct review.  Moreover, he has not satisfied an

exception to this procedural bar by showing either innocence or

cause and actual prejudice.  Finally, petitioner's claim fails on

the merits.  Deportation is a collateral consequence of a plea,

and the government did not misrepresent to petitioner the

consequences of his plea.

The Petition should be denied.

> Respectfully submitted,
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By: _____
> GREGORY MOFFATT
> Assistant U.S. Attorney

August 12, 2005

## **Certificate of Service**

I hereby certify that a copy of the attached document was served on Petitioner's counsel, William A. Korman, Esq., Prince, Lobel, Glovsky & Tye, LLP, 585 Commercial Street, Boston, MA 02109, by first class mail, this 12th day of August, 2005.

GREGORY MOFFATT

-10-

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*1 Courthouse Way, Suite 9200*
*Boston, Massachusetts  02210*

June 23, 2000

<u>By Telecopier</u>
<u>and First Class Mail</u>

Ernst Guerrier, Esq.
Guerrier & Associates, P.C.
161 Granite Avenue, 2nd Floor
Boston, MA 02124

Re: <u>United States v. Daniel Jean-Louis</u>
     Criminal No. 00-M-881-MBB

Dear Mr. Guerrier:

     This letter sets forth the Agreement between the United
States Attorney for the District of Massachusetts ("the U.S.
Attorney") and your client, Daniel Jean-Louis ("Defendant"), in
the above-captioned case.  The Agreement is as follows:

     1.   <u>Plea</u>

     On or before July 6, 2000, or as soon thereafter as the
Court may schedule, Defendant shall waive indictment and plead
guilty to a one-count Information charging him with conspiracy to
commit bank fraud in violation of 18 U.S.C. § 371.  A copy of the
Information is attached hereto.  Defendant expressly and
unequivocally admits that he in fact knowingly committed the
crime charged in the above-mentioned Information, and is in fact
guilty of that offense.

     2.   <u>Penalties</u>

     Defendant faces the following maximum penalties: five years'
imprisonment, a $250,000 fine, three years' supervised release;
a mandatory $100.00 special assessment; and restitution in the
amount of $12,869.01.

     Defendant may also be deportable and/or excludable by the
United States Immigration and Naturalization Service as a

consequence of his conviction of the offense to which he is pleading guilty.

3.   Sentencing Guidelines

The parties will take the following positions at sentencing under the United States Sentencing Guidelines:

The parties agree to take the position that the appropriate Guideline for calculating the sentence to be imposed is § 2F1.1, and that the Base Offense Level is 6.   The parties further agree that the amount of loss attributable to defendant was more than $10,000 and less than $20,000, and that an increase of 3 points is appropriate, under § 2F1.1(b)(1)(D).   Thus, the Total Offense Level, prior to calculating for role in the offense and acceptance of responsibility, is 9 points.

Based on information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by two levels Defendant's Adjusted Offense Level under U.S.S.G. § 3B1.2(b) for a minor role in the offense conduct.

Further, based on Defendant's prompt acceptance of personal responsibility for the offense of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by two levels Defendant's Adjusted Offense Level under U.S.S.G. § 3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between his execution of this Agreement and sentencing Defendant:

(a)   Fails to admit a complete factual basis for the plea;

(b)   Fails to truthfully admit his conduct in the offense of conviction;

(c)   Falsely denies, or frivolously contests, relevant conduct for which Defendant is accountable under U.S.S.G. § 1B1.3;

(d)   Fails to provide truthful information about his financial status;

(e)   Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for

2

which Defendant is accountable under U.S.S.G.
§ 1B1.3;

(f)   Engages in acts which form a basis for finding
that Defendant has obstructed or impeded the
administration of justice under U.S.S.G. § 3C1.1;

(g)   Intentionally fails to appear in Court or violates
any condition of release;

(h)   Commits a crime; and/or

(i)   Attempts to withdraw his guilty plea.

Defendant expressly understands that he may not withdraw his
plea of guilty if, for any of the reasons listed above, the U.S.
Attorney does not recommend that he receive a reduction in
Offense Level for acceptance of responsibility.

Defendant expressly understands that, in addition to
declining to recommend an acceptance-of-responsibility
adjustment, the Government may seek an upward adjustment pursuant
to U.S.S.G. § 3C1.1 if Defendant obstructs justice after date of
this Agreement.

4.   Sentence Recommendation

The U.S. Attorney agrees to recommend the following sentence
before the District Court:

(a)   a period of probation if Defendant's guideline
sentencing range falls within Zone A, with a home
detention if the defendant is deemed an appropriate
candidate for home detention by the Probation Office,
or otherwise a half-way house component, if the range
falls within Zone B; incarceration at the low-end of
the applicable guideline sentencing range, including a
split sentence with a home detention component, if the
defendant is deemed an appropriate candidate for home
detention by the Probation Office,  or otherwise a
half-way house component, if the guideline sentencing
range falls within Zone C;

(b)   a fine at the low end of the applicable guideline
sentencing range, unless the Court finds that Defendant
will not able and, even with the use of a reasonable
installment schedule, will not likely become able to
pay a fine;

3

    (c)   $100 mandatory special assessment;

    (d)   probation or supervised release (as applicable) for three years; and

    (e) restitution in the amount of $12,869.01.

The U.S. Attorney and Defendant agree that there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines. Accordingly, neither the U.S. Attorney nor Defendant will seek a departure on any ground from the Sentencing Guidelines.

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

5.    Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6.    Court Not Bound By Agreement

The sentencing recommendations made by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the U.S. Probation Office or the sentencing judge. Within the maximum sentence which Defendant faces under the applicable law, the sentence to be imposed is within the sole discretion of the sentencing judge. Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(e)(1)(B). Defendant may not withdraw his plea of guilty regardless of what sentence is imposed. Nor may Defendant withdraw his plea because the U.S. Probation Office or the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the parties. In the event that the sentencing judge declines to follow the Sentencing Guidelines calculations or recommendations of the U.S. Attorney, the U.S. Attorney reserves the right to defend the sentencing judge's calculations and sentence in any subsequent appeal or collateral challenge.

7.    Information For Presentence Report

Defendant agrees to provide all information requested by the

4

U.S. Probation Office concerning his assets.

### 8.    Civil Liability

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charge specified in paragraph one of this Agreement.

### 9.    Rejection of Plea By Court

Should Defendant's guilty plea not be accepted, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

### 10.    Breach of Agreement

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing.   The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement.   Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement.   Defendant recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea.   Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by her, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, without any limitation.   In this regard, Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

### 11.    Who Is Bound By Agreement

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the

Attorney General of the United States or any other federal, state or local prosecutive authorities.

### 12.  Complete Agreement

This letter contains the complete and only agreement between the parties relating to the disposition of this case.  No promises, representations or agreements have been made other than those set forth in this letter.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney Gregory Moffatt.

Very truly yours,

DONALD K. STERN
United States Attorney

By:_____

JAMES B. FARMER
Assistant U.S. Attorney
Chief, Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

GREGORY MOFFATT
Assistant U.S. Attorney

### ACKNOWLEDGMENT OF PLEA AGREEMENT

I have had this letter read to me in its entirety in my native language and discussed it with my attorney.  I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts.   I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crime to which I

6

have agreed to plead guilty, the maximum penalty for that offense
and Sentencing Guideline penalties potentially applicable to it.
I am satisfied with the legal representation provided to me by my
attorney.  We have had sufficient time to meet and discuss my
case.  We have discussed the charge against me, possible defenses
I might have, the terms of this Plea Agreement and whether I
should go to trial.  I am entering into this Agreement freely,
voluntarily, and knowingly
because I am guilty of the offenses to which I am pleading guilty
and I believe this Agreement is in my best interest.


                              _____
                              DANIEL JEAN-LOUIS
                              Defendant


                              Date:_____


     I certify that Daniel Jean-Louis has had this Agreement read
to him in his native language and that we have discussed its
meaning.  I believe he understands the Agreement and is entering
into the Agreement freely, voluntarily and knowingly.

                    .
                              _____
                              ERNST GUERRIER, ESQ.
                              Attorney for Defendant


                              Date:_____


                                   7

**EXHIBIT B**

1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
2

3
        *   *   *   *   *   *   *   *   *   *   *   *
4       UNITED STATES OF AMERICA,           *
                                            *
5                    v.                      *   Criminal Action:
                                            *    00-10234-DPW
6                                           *
        DANIEL JEAN-LOUIS,                   *
7                        Defendant          *
        *   *   *   *   *   *   *   *   *   *   *   *
8

9
                        Before the Honorable
10      United States District Court Judge Douglas P. Woodlock

11
                          **Rule 11 Hearing**
12

13
        APPEARANCES:
14

        Office of the United States Attorney,
15      Gregory Moffatt, Assistant United States Attorney,
        1 Courthouse Way, Boston, Massachusetts  02210
16      for the United States.

17

        By Attorney Gordon W. Spencer,
18      1256 Park Street, Suite 104, Stoughton, Massachusetts  02072
        for the Defendant.
19

20
                                Courtroom 1 - 3rd Floor
21                              1 Courthouse Way
                                Boston, Massachusetts 02210
22                              Thursday, July 20, 2000
                                11:45 AM to 12:10 PM
23

24              Nancy L. Eaton - Per Diem Court Reporter
                13 Short Street, Reading, MA  01867-1014
25                            617-633-5178

USA v. Daniel Jean-Louis - Rule 11 Hearing - 2

1          (Defendant present in the courtroom.)

2          THE CLERK:  This honorable Court is now in session.

3   Please be seated.  Calling case United States versus Daniel

4   Jean-Louis, Criminal number 00-10234.  Will the interpreter

5   stand and raise your right hand.

6          (Interpreter Vignoble Sylvestre was sworn by the

7   clerk.)

8          THE CLERK:  Please be seated.

9          THE COURT:  Perhaps the interpreter would like to

10  sit next to the defendant.

11         How do I pronounce the last name, Jean Louie?

12         MR. SPENCER:  Jean Lwee.

13         THE COURT:  I have a paper dated July 6th between

14  the defendant and the United States indicating an intention to

15  plead guilty to an information, so what I am going to do is have

16  Miss Greenberg swear the defendant and ask him some questions.

17         THE CLERK:  Defendant please stand and raise your

18  right hand.

19         (Defendant was sworn).

20         THE DEFENDANT:  Yes.

21         INTERPRETER:  Yes.

22         THE CLERK:  You may be seated.

23         THE COURT:  Mr. Jean-Louis, the purpose of this

24  hearing is to satisfy me that what appears to be your intention

25  to plead guilty to what is called an information is a knowing

USA v. Daniel Jean-Louis - Rule 11 Hearing - 3

1   and voluntary act on your part.  In order for me to make that

2   kind of determination, I have to ask you a number of questions.

3   Some of those questions are personal in nature.  You will

4   understand I am not trying to delve into your personal life

5   except as it helps me to understand whether or not you really

6   know what you are doing and what you are doing is voluntary.  Do

7   you understand?

8                   (Defendant responses through interpreter.)

9                   THE DEFENDANT:  Yes.

10                  THE COURT:  All right.  Can you tell me how old a

11  man you are?

12                  THE DEFENDANT:  31.

13                  THE COURT:  How far did you get in school?

14                  THE DEFENDANT:  College.

15                  THE COURT:  Where was that?

16                  THE DEFENDANT:  In my country?

17                  THE COURT:  In Haiti?

18                  THE DEFENDANT:  Yes.

19                  THE COURT:  Did you graduate from college?

20                  THE DEFENDANT:  Yes.

21                  THE COURT:  What course of study did you pursue?

22                  THE DEFENDANT:  Electronics.

23                  THE COURT:  How long have you been in this country?

24                  THE DEFENDANT:  I came in '91, so from '91 to 2000

25  is eight years.

USA v. Daniel Jean-Louis – Rule 11 Hearing - 4

1           THE COURT:  What have you been doing for a living

2  for the past several years?

3           THE DEFENDANT:  I was working.

4           THE COURT:  Doing what kind of work?

5           THE DEFENDANT:  I was delivering for Domino's

6  Pizza.  And then I worked for a parking -- parking attendant.

7           THE COURT:  Have you had any difficulty

8  understanding what this case is about, what it is that the

9  government has charged you with?

10          THE DEFENDANT:  No.

11          THE COURT:  Have you had an adequate opportunity to

12  discuss this case with Mr. Spencer, your attorney?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you feel that you have received

15  legal advice that you need from Mr. Spencer to make your own

16  decision on whether or not to plead guilty to the information?

17          THE DEFENDANT:  Yes.

18          THE COURT:  I made reference to a plea agreement

19  between you and the government and it is recorded in this letter

20  of July 6th to Mr. Spencer from the United States Attorney's

21  office signed by Mr. Farmer, the chief of the Criminal Division,

22  and I believe signed by both you and Mr. Spencer today.  Have

23  you had an adequate opportunity to review that plea agreement,

24  understand what it means?

25          THE DEFENDANT:  Do I need more time?  Is that what

USA v. Daniel Jean-Louis - Rule 11 Hearing - 5

1  you are asking?

2          THE COURT:  Have you had an adequate amount of time

3  to review it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  You understand that this plea agreement

6  outlines the penalties that potentially could be imposed in this

7  case?  It could be a penalty as much as five years in prison,

8  $250,000 fine, three years of supervised release.  There is an

9  obligation to pay a $100 special assessment and the government

10  will be seeking restitution in the amount of $12,869.01.  You

11  understand that that is the potential sentence in this case?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And you understand as well that on your

14  behalf and behalf of the government, the parties have taken some

15  preliminary views of what the sentencing guidelines would be for

16  this kind of offense and it is set forth fairly in detailed

17  fashion as what the parties agree-upon position will be

18  regarding the sentencing guidelines.  Sentencing guidelines are

19  a series of directives to me to tell me what the range of

20  sentence ought to be for particular offenses involving

21  particular offenders.  And the parties frequently in connection

22  with plea agreements make some judgments about what sentencing

23  guideline elements might be.  But I want to be clear.  You

24  understand I am not bound by whatever agreements the parties

25  have?

1                   THE DEFENDANT:  I understand.

2                   THE COURT:  You understand that I will make my own

3    determination about what I think the sentencing guidelines

4    require under these circumstances?

5                   THE DEFENDANT:  Okay.

6                   THE COURT:  And what that means is that you are

7    pleading guilty in the face of uncertainty about what I am going

8    to do about sentence.  Do you understand that?

9                   THE DEFENDANT:  Yes.

10                  THE COURT:  You won't have a chance to withdraw

11   your plea if you don't like the sentence that I impose.

12                  THE DEFENDANT:  Okay.

13                  THE COURT:  All right.  Now, let me ask you this.

14   Have you ever had any problem with substance abuse, either drugs

15   or alcohol?

16                  THE DEFENDANT:  No, I don't drink.  I don't smoke.

17                  THE COURT:  Are you presently under the care of a

18   physician or any physical ailments?

19                  THE DEFENDANT:  Yes.

20                  THE COURT:  What is that?

21                  THE DEFENDANT:  A car accident.

22                  THE COURT:  What's the nature of the complaint?

23                  THE DEFENDANT:  I have neck and back problems along

24   with my right arm and my shoulder.

25                  THE COURT:  Are you taking any medicines of any

 1   kind?

 2                THE DEFENDANT:  No, I am in therapy.  I am seeing a

 3   doctor.

 4                THE COURT:  That's physical therapy?

 5                THE DEFENDANT:  Yes.

 6                THE COURT:  Are you taking any prescription

 7   medicines of any kind?

 8                THE DEFENDANT:  No, not now.

 9                THE COURT:  Have you ever had occasion to consult

10   with a mental health professional like a psychiatrist,

11   psychologist or a psychiatric social worker?

12                THE DEFENDANT:  No.

13                THE COURT:  Now, you understand that what appears

14   to be your decision to plead guilty to this information is a

15   choice that is fairly significant.  You are giving up certain

16   valuable constitutional rights.  In so far as the information is

17   concerned, no party who is accused of a crime in this country,

18   felony crime in this country, may be charged without the

19   approval of a Grand Jury, unless that party agrees to let the

20   government proceed directly against them.

21                An information is a document that permits the

22   government to proceed directly against a defendant.  But you

23   have a right to require that the government present your case to

24   a Grand Jury.  A Grand Jury consists of 23 citizens, twelve of

25   whom, majority of whom, have to vote in favor of the criminal

USA v. Daniel Jean-Louis – Rule 11 Hearing - 8

1  charges before the government can proceed.  Do you understand

2  that?

3           THE DEFENDANT:  Uh-huh.

4           THE COURT:  Do you understand that from time to

5  time Grand Juries choose not to indict even though the United

6  States Attorney would like them to?  And if the Grand Jury

7  doesn't approve an indictment, then the government can't go

8  forward with the case.  By pleading guilty to an information,

9  you are helping the government avoid that kind of review of

10  whether or not this criminal case should proceed.  Do you

11  understand that?

12           THE DEFENDANT:  I understand.

13           THE COURT:  There is a possibility that the Grand

14  Jury would choose not to indict you.  You understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Now, in addition, you are giving up

17  other valuable constitutional rights.  You have the right to

18  force the government to prove its case against you and the

19  government must meet its burden beyond a reasonable doubt.  You

20  are presumed innocent unless and until the government is able to

21  satisfy the jury or me beyond a reasonable doubt of each

22  essential element of the offense charged against you.  You don't

23  have to do anything at all in a criminal trial.  You can look

24  the government straight in the eye and say:  Prove it.  And

25  unless and until they do, you can't be found guilty.  Do you

1  understand that?

2          THE DEFENDANT:  I understand.

3          THE COURT:  In addition, you have a right to

4  challenge the government's case.  Mr. Spencer would be given the

5  opportunity to cross-examine the government's witnesses.  He can

6  bring in witnesses on your behalf.  If the witnesses wouldn't

7  come in voluntarily, I would give him subpoena power to bring

8  those witnesses in under court order.  You would have the right

9  to choose to take the witness stand yourself or you could choose

10 not to take the witness stand; and if you didn't, I would tell

11 the jury that they can't hold that against you.  That is another

12 constitutional right that you have that serves to reinforce the

13 broader proposition that the burden rests with the government.

14 The government can't force the defendant to help them out at

15 trial.  That burden stays with the government throughout the

16 trial, just as the presumption of innocence stays with you

17 throughout the trial until the government satisfies the trier of

18 fact beyond a reasonable doubt of each and every offense.

19          Now, you understand by pleading guilty you are

20 taking that burden off the government's shoulders, making life

21 easier for the government and giving up those valuable

22 constitutional rights.  You understand that?

23          THE DEFENDANT:  I understand.

24          THE COURT:  Now, in addition you may be affecting

25 other aspects of your life quite apart from whatever the

USA v. Daniel Jean-Louis - Rule 11 Hearing - 10

1  sentence might be in this case, that is to say, you may be

2  giving up the right to vote, you may be giving up the right to

3  hold a firearm, you may be giving up the right to hold a public

4  office.  I am not familiar with your immigration status, but it

5  may affect your immigration status as well, a whole series of

6  other aspects of your life may be affected by your decision to

7  plead guilty.  Do you understand that?

8              THE DEFENDANT:  I understand.

9              THE COURT:  Now, I made reference to the plea

10  agreement earlier but I want to be clear:  Is this the entire

11  agreement that you have with the government?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Did anybody threaten you in any way to

14  get you to plead guilty?

15              THE DEFENDANT:   No.

16              THE COURT:  Did anybody promise you anything that

17  is not included in this plea agreement to get you to plead

18  guilty?

19              THE DEFENDANT:  No.

20              THE COURT:  One of the things that I have to do is

21  satisfy myself that there is sufficient evidence from which a

22  finder of fact could find you guilty of the offense charged

23  beyond a reasonable doubt.  In order to do that, I am going to

24  ask Mr. Moffatt to tell me briefly what the evidence would be if

25  this case were to go to trial.  I want to you listen very

USA v. Daniel Jean-Louis - Rule 11 Hearing - 11

1    carefully to what he has to say because when it is through, when

2    he is through, I am going to ask you whether or not that's what

3    happened here.  All right?  Okay, Mr. Moffatt.

4                THE DEFENDANT:  Okay.

5                MR. MOFFATT:  Thank you your Honor.  Your Honor,

6    very briefly by way of background, from on or about June 18,

7    1999 to November 24, 1999, defendants co-conspirator Richardson

8    Rhau, obtained at least 22 checks drawn on accounts of

9    businesses operating in the New York City area from persons who

10   had stolen those checks from the maker or payee businesses.  The

11   majority of those checks were stolen from Cushman and Wakefield

12   acting as agent for several commercial real estate entities.

13               On July 8, 1999, Mr. Rhau, using the fraudulent

14   identify Adam Giuliano opened a business checking account in the

15   name of Bloomberg L. P.  at a Citizen's Bank branch in the

16   Brighton section of Boston.  In so doing, Mr. Rhau represented

17   himself to be the sole proprietor of Bloomberg L. P.  As proof

18   of the fraudulent identity, Mr. Rhau provided a fraudulent New

19   Jersey driver's license in the name of Adam Giuliano.

20               Deposits are insured by the Federal Insurance

21   Deposit Corporation.  After opening the Bloomberg account,

22   several fraudulent transactions were made using the account.  On

23   September 7th, 1999, Mr. Jean-Louis made a deposit in the amount

24   of $12,869.01 into the Bloomberg account at a Citizen's Bank

25   branch in the West Roxbury section of Boston.  Bank surveillance

1  photographs depict that transaction.  The deposited check was

2  among those checks stolen, which I previously referenced.  It

3  was drawn on the Chase Manhattan Bank account of Cushman and

4  Wakefield and was payable to an entity called D. B. Kelley

5  Associates.  The check was endorsed only with the following:

6  "For deposit only $12,869.01".  At the time the deposit was made

7  there was a balance of $43.52 in the account.

8          Following that deposit on September 7, seven

9  withdrawals were made between September 8 and September 13,

10  1999, the total value of which was $12,505.  These withdrawals

11  left a balance of $364.01 in the Bloomberg account.

12          THE COURT:  Just a moment.

13          INTERPRETER:  Could you repeat the last?

14          MR. MOFFATT:  Following the deposit on September

15  7th, seven withdrawals were made between September 8th and

16  September 13, 1999, the total value of which was $12,505.  These

17  withdrawals left a balance of $364.01 in the Bloomberg account.

18  Thank you, your Honor.

19          THE COURT:  You understand, Mr. Jean-Louis, what

20  the government has charged you with is a conspiracy, that is,

21  you together with one or more other persons entered into an

22  agreement to violate the federal law.  The agreement that the

23  government says that you entered into was an agreement to engage

24  in bank fraud.  In order for the government to prove bank fraud

25  and an agreement to engage in bank fraud, they have to show that

USA v. Daniel Jean-Louis - Rule 11 Hearing - 13

1  you entered into an agreement to engage in a scheme to make

2  false statements or misrepresentations to obtain money from a

3  federally insured institution and that you acted knowingly; and

4  although the issue is one now under consideration by the Court

5  of Appeals in this judicial circuit, that you have to have been

6  shown to have intended to injure the bank, harm the bank in some

7  fashion.

8          Now, have you had a full discussion with Mr.

9  Spencer about the nature of those charges?  And the kind of

10  defenses that you have to those charges?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Are you satisfied you've received from

13  Mr. Spencer the kind of legal advice that you need to evaluate

14  whether or not and if so how to contest those charges?

15          THE DEFENDANT:  I understand.

16          THE COURT:  And you've heard what Mr. Moffatt tells

17  you briefly the evidence will be in this case.  Do you dispute

18  anything that Mr. Moffatt said?

19          THE DEFENDANT:  Do I do what?

20          THE COURT:   Do you dispute anything Mr. Moffatt

21  said?

22          THE DEFENDANT:  I agree.

23          THE COURT:  That is what happened?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Well, I am prepared to receive a plea

1  to the information.  Has the defendant executed the waiver of

2  indictment?

3           MR. MOFFATT:  Not yet, your Honor.  It is available

4  for their signatures at this point.

5           MR. SPENCER:  Shall we sign now?

6           THE COURT:  Yes, please.

7           (Defendant and counsel conferred.  Defendant signed

8  document.)

9           (Document handed to the clerk and then to the

10 judge.)

11          THE COURT:  Based on the discussion we've had this

12 morning, I'm satisfied that the decision to waive the indictment

13 that is embodied in the waiver of indictment form that has been

14 executed in my presence is a knowing and voluntary act on Mr.

15 Jean-Louis' part.  And let me ask this.  Mr. Spencer, do you

16 know of any reason that I should not accept it?

17          MR. SPENCER:  I do not, your Honor.

18          THE COURT:  Mr. Moffatt, do you know of any reason

19 I should not?

20          MR. MOFFATT:  I do not.

21          THE COURT:  I'll have Miss Greenberg inquire of the

22 defendant.

23          THE CLERK:  Defendant please stand.

24          THE CLERK:  Daniel Jean-Louis, on criminal

25 00-10234-DPW, you are charged in count one of a one count

1  information with conspiracy in violation of title 18, United

2  States Code, section 371.  What say you as to count one, guilty

3  or not guilty?

4              THE DEFENDANT:  Guilty.

5              THE CLERK:  Please be seated.

6              THE COURT:  Based on the discussion we've had this

7  morning concerning the question of the knowing and voluntary

8  character of the defendant's decision to plead guilty, I'm

9  satisfied it is knowing and voluntarily and it is supported by

10  substantial evidence by the trier of fact; accordingly, you are

11  now judged guilty of the offense charged in the information.

12              The next stage of this case will be sentencing.

13  Sentencing will take place on October 24th at 2:30 PM.  What

14  happens next, Mr. Jean-Louis, is the probation office of this

15  court will prepare what is called a Presentence Report.  It is a

16  document that I rely on very heavily in making my own decision

17  about what the proper sentence should be.  You'll have an

18  opportunity to consult with the probation office along with Mr.

19  Spencer.  You can make suggestions to them on matters that they

20  are to consider in the presentence report.

21              You'll have an opportunity to review the

22  presentence report; and if you are not satisfied with it in its

23  draft form, you can make objections about changes.  If those

24  changes aren't made to your satisfaction, at the time of

25  sentencing you can bring the matter to my attention and ask me

USA v. Daniel Jean-Louis - Rule 11 Hearing - 16

1   to make change to the presentence report.  At the time of

2   sentence both you and Mr. Spencer will have an opportunity to

3   address me as to the appropriate considerations and the proper

4   sentence to be imposed in this case.  I assume that the previous

5   conditions of release will remain in effect?

6               MR.  MOFFATT:  That's correct, your Honor.

7               THE COURT:  Is there anything else that we need to

8   take up now this afternoon?

9               MR. MOFFATT:  Not from the government's

10  perspective.

11              MR. SPENCER:  Not from my client.

12              THE COURT:  Then we will be in recess.

13              THE CLERK:  All rise.

14              (Court recessed at 12:10 PM.)

15

16              C E R T I F I C A T I O N

17

18        I, Nancy L. Eaton, certify that the foregoing is a

19  correct transcript from the record of proceedings in the

20  above-entitled matter.

21

22  Nancy L. Eaton, Court Reporter          Date (July 8, 2005)

23

24

25

**EXHIBIT C**

```
 1                    UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MASSACHUSETTS

 3      * * * * * * * * * * * * * * * *
                                      *
 4      UNITED STATES                 *
                        Plaintiff     *
 5                                     *
            VERSUS                     *    CR-00-10234-DPW
 6                                     *
        DANIEL JEAN-LOUIS              *
 7                        Defendant    *
                                      *
 8      * * * * * * * * * * * * * * * *

 9          BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

10             UNITED STATES DISTRICT COURT JUDGE

11                    SENTENCING HEARING

12                    NOVEMBER 15, 2000

13      APPEARANCES:

14          GREGORY MOFFATT, ESQ., Assistant United States
            Attorney, United States Attorney's Office,
15          1 Courthouse Way, Suite 9200, Boston,
            Massachusetts  02210, on behalf of the United
16          States

17          GORDON W. SPENCER, ESQ., 1256 Park Street, Suite
            104, Stoughton, Massachusetts  02072, on behalf
18          of the Defendant

19      INTERPRETER:  Vignoble Sylvester

20                            Courtroom No. 1 - 3rd Floor
                              1 Courthouse Way
21                            Boston, Massachusetts 02210
                              4:00 P.M. - 4:15 P.M.
22
                Pamela R. Owens - Official Court Reporter
23             John Joseph Moakley District Courthouse
                   1 Courthouse Way - Suite 3200
24                   Boston, Massachusetts  02210

25          Method of Reporting:  Computer-Aided Transcription
```

1              CR-00-10234-DPW

2              NOVEMBER 15, 2000

3      (Interpreter sworn)

4              THE COURT:  Well, Mr. Spencer, have you and

5      your client had an adequate opportunity to review the

6      presentence report in light of the addenda that's been

7      filed here?

8              MR. SPENCER:  We have, Your Honor.

9              THE COURT:  And are there any changes or

10     corrections that you'd like to press on me after having

11     reviewed it in light of the addenda?

12             MR. SPENCER:  Your Honor, there is one fact

13     that we would like to disclose to the Court, that being

14     I believe one of the paragraphs -- and I'll be more

15     specific -- says changes made by the Probation Office,

16     paragraph number (56) -- and I read, "This paragraph has

17     been amended to indicate that Liberty Medical Services

18     has no record of the defendant."  There was a statement

19     made in the presentence report that my client was

20     receiving physical therapy from a place in Queens named

21     Liberty Medical Services and I believe a followup

22     investigation by Probation indicated that my client had

23     not been treating there.  I have documentation which

24     suggests otherwise that I would like to submit to the

25     Court if the Court pleases.

1          THE COURT:  Okay.  You have shared it with Mr.

2    Moffatt?

3          MR. MOFFATT:  I have not seen it yet, Your

4    Honor, but --

5          MR. SPENCER:  I have a copy for Probation,

6    Your Honor.

7          THE COURT:  This has not been previously

8    provided to the Probation Department?

9          MR. SPENCER:  It has not.

10         THE COURT:  Okay.  Well, is this the only

11   evidence then, because what is included is this

12   suggestion that he was for the period of March through

13   August every three weeks receiving physical therapy.

14         MR. SPENCER:  Yes, Your Honor.

15         THE COURT:  This is an observation on a

16   particular day, April 10th, but it doesn't indicate

17   treatment over a long-term period.

18         MR. SPENCER:  I believe, just based upon the

19   information provided by the Probation Department, that

20   they investigated this matter and came up with no

21   evidence that my client ever visited or had any

22   connection or involvement with Liberty Medical Services.

23   And I was just offering evidence to suggest otherwise.

24         THE COURT:  Well, what I think I'm going to do

25   is exclude -- that is, cut out -- so much of paragraph

4

1    (56) as begins, "According to Jean-Louis until August"

2    to the end.  And we have simply that, his report

3    throughout this event.  And rather than getting drawn

4    into a dispute over the precise name and the times of

5    medical service, I'll simply take that out.  Okay.

6              MR. SPENCER:  Thank you.

7              THE COURT:  So, then, based on this, we have a

8    total offense level of 5; a criminal history category of

9    1, as a consequence of which the Guideline range would

10   be zero to 6 months imprisonment; a Guideline fine range

11   of 250 to $5,000.  There is an amount of restitution

12   here which appears from the presentence report to

13   properly be identified as -- I believe it's $12,869 and

14   a penny.

15             MR. MOFFATT:  That's correct, Your Honor.

16             THE COURT:  There is a supervised release

17   Guideline range of two to three years.  And there is a

18   Guideline range for probation as well of up to three

19   years because of the zone that we are in.

20             Are we all dealing with the same set of

21   numbers?

22             MR. SPENCER:  That's correct.

23             MR. MOFFATT:  Yes, Your Honor.

24             THE COURT:  All right.  Mr. Moffatt, I'll hear

25   from you with respect to recommendation.

1       MR. MOFFATT:  Thank you, Your Honor.

2           The Government's recommendation is a period of

3   probation of three years.  Your Honor, as the Court has

4   noted, given the Government's request for restitution

5   and the apparent mandate for restitution, the Government

6   would recommend no fine because given Mr. Jean-Louis'

7   present lack of employment, it appears that even with

8   use of a reasonable schedule, he would be unlikely to

9   pay a fine.  Three years of supervised -- I beg your

10  pardon, Your Honor.  Payment of the $100 mandatory

11  special assessment.  And Your Honor, the restitution to

12  Citizens Bank in the amount of $12,869.01.

13          THE COURT:  All right.  Do you want to be

14  heard further on the basis for that recommendation?

15  That is -- and really addressing the questions of

16  proportionality, for example, with Mr. Raoul who I

17  sentenced to 24 months in prison.

18          MR. MOFFATT:  Correct, Your Honor.  Your

19  Honor, Mr. Jean-Louis -- I believe that's the way he

20  pronounces it.  Mr. Jean-Louis' participation in this

21  scheme is probably less extensive than any of the other

22  people identified by the Government in this case.

23  Whereas Mr. Raoul was quite clearly the organizer and

24  hub of a multi-state scheme, what the Government

25  understands happened with respect to Mr. Jean-Louis was

6

1    that he actually accompanied another person who has now

2    pled guilty and is awaiting sentencing.  Her name is

3    Monique Antoine.  On a number of occasions, he and Ms.

4    Antoine has a personal relationship.  He accompanied her

5    from New York to Boston.  In some sense, I guess it

6    would suffice to say because of his personal interest in

7    her and for her personal security, at some point he had

8    been coming back and forth to Boston, but apparently

9    without any active involvement.  And the Government

10   doesn't have any knowledge or any evidence to suggest

11   that he even had specific knowledge of what was going

12   on.  But at some point, he just got involved in it.  And

13   then apart from this isolated instance and the material

14   that the Government did feel it was compelled to supply

15   to Probation as recorded in the addendum, there is no

16   other indication that Mr. Jean-Louis was involved in

17   this scheme at all.  It is the smallest dollar amount

18   involved in any of the participants and it does seem to

19   be somewhat isolated.  And, therefore, the Government

20   believes it is appropriate to treat him in this way.

21   At the same time, Your Honor, the Court is aware Mr.

22   Jean-Louis is not an American citizen.  He does face the

23   possibility that he would be deported from the United

24   States.  In fact, that may be the most significant

25   aspect and the most significant portion or the most

7

1    significant possibility of punishment.  That's

2    obviously not for my office to determine, but rather

3    that will be left to INS how it decides to pursue that

4    matter.  But it is a very real possibility for him.

5              THE COURT:  Mr. Spencer?

6              MR. SPENCER:  Your Honor, I would concur with

7    Mr. Moffatt's representations to the Court regarding the

8    issue of sentencing.  I believe Mr. Moffatt's assessment

9    of my client's roles with respect to this criminal

10   enterprise is not only fair, but accurate.  I believe

11   that this was a criminal course of conduct which

12   spanned over six months and involved the fraudulent

13   misappropriation of monies amounting to over a million

14   dollars.  We have one isolated incident on behalf of Mr.

15   Jean-Louis amounting or rising to about $12,000.  And as

16   my brother accurately reflects, there's no indicia of

17   evidence to show that he played any other role with

18   respect to accompanying these co-defendants on any other

19   financial transactions.  And it is true my client is an

20   immigrant who's from Haiti.  He's been here since 1991.

21   He does face a potential or possibility for deportation

22   meaning he can never come back to this country, at least

23   subject to the immigration laws for a period of at least

24   ten years, if not indefinitely.

25              I would submit that, based upon the

8

1    Government's assessment of this case, that they are in

2    the best position to know the evidence of what they

3    could prove and what they could not prove and to know my

4    client's involvement, that my client would, in fact, be

5    a suitable candidate for Probation and I concur in the

6    Government's recommendation.

7              THE COURT:  All right.  Well, Mr. Jean-Louis,

8    I'll hear from you if there is something that you would

9    like to say on this point.

10             MR. JEAN-LOUIS:  No.  My lawyer just said it.

11   He spoke for me.

12             THE COURT:  All right.  Well, I will accept

13   the recommendation of the parties here and impose a

14   period of probation for three years.  The defendant is

15   obligated to make restitution to the Citizens Bank.

16   That restitution is joint and several with that imposed

17   previously by me with Richardson Raoul to the amount

18   in the case of Mr. Jean-Louis of, as I've indicated,

19   $12,869.01.  That amount shall be paid according to a

20   repayment schedule that will become part of the court

21   order after a discussion with the Probation Office.  The

22   payments will be made to the Clerk of the Court for

23   transfer to Citizens Bank.  I will not impose a fine

24   here, but I must impose a mandatory special assessment

25   and I will do so in the amount of $100 which is due and

1    payable forthwith.  The defendant is obligated to report

2    to the United States Attorney within ten days of any

3    change of address or residence that occurs while the

4    restitution has not been paid.  While the defendant is

5    on probation, he is obligated not to commit any other

6    federal, state, or local crime.  He's obligated to

7    refrain from any unlawful use of control substances.

8    And in this connection, the Probation Office is

9    authorized to conduct such testing as they believe

10   necessary to determine whether or not there has been

11   recourse to the use of unlawful controlled substances.

12   In addition, the defendant must comply with the standard

13   conditions of probation and the following special

14   conditions:  That he is prohibited from possessing a

15   firearm or other dangerous weapon; that he is to pay the

16   balance of the restitution according to the schedule

17   that I have imposed; that he is prohibited from

18   incurring any new credit charges or opening additional

19   lines of credit until or without the approval of the

20   Probation Office until the defendant has complied with

21   the payment schedule.  He is obligated to provide the

22   Probation Office with access to any financial

23   information which the Probation Office shall request.

24   He is obligated, if ordered deported, to leave the

25   United States promptly and not to return without prior

10

1    permission of the Attorney General.  In addition, I am

2    going to impose as a condition that the defendant during

3    the first two years of supervised release complete 250

4    hours of community service per year at an agency to be

5    identified by the Probation Office.

6            Mr. Jean-Louis, the sentence here is a

7    relatively mild one considering the scope of the

8    offenses involved.  I recognize, as your lawyer very

9    ably argued and as the Government very candidly

10   indicated, that your involvement here was relatively

11   minimal in the larger scheme and it may well have been

12   induced by a misplaced interest in one of the other

13   participants.  All of that having been said, however,

14   it's a crime and it is a crime of which you were aware.

15   In order to reflect the seriousness of this, but also to

16   give you an opportunity to pay back to some degree the

17   community, I am imposing that period of community

18   service.  It's an opportunity in some ways to do things

19   that we all ought to do.  I'm sometimes concerned about

20   imposing community service because it demeans those who

21   do that on their own voluntarily.  But it seems to me

22   that in your case it is an important element of a

23   sentence to emphasize to you the seriousness of the

24   crime that you've engaged in and also to provide you

25   with an opportunity to pay back to some degree the

11

1    community in a very tangible way with services for your

2    involvement.

3              You should understand that you have a right of

4    appeal and you will want to consult with counsel about

5    whether or not to exercise that right.

6              Now, is there anything further that we need to

7    take up?

8              MR. MOFFATT:  Not from the Government, Your

9    Honor.

10             THE COURT:  Mr. Spencer?

11             MR. SPENCER:  No, Your Honor.

12             THE COURT:  Thank you very much.

13             MR. MOFFATT:  Thank you, Your Honor.

14             MR. SPENCER:  Thank you.

15                  RECESSED AT 4:15 P.M.

16

17                  C E R T I F I C A T E

18             I, PAMELA R. OWENS, Official Court Reporter,

19    U. S. District Court, do hereby certify that the

20    foregoing is a true and correct transcription of the

21    proceedings taken down by me in machine shorthand and

22    transcribed by same.

23

24                  *Pamela R. Owens 8/3/05*

25

**EXHIBIT D**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          CRIMINAL NO. 00-10234-DPW (001)

           V.                     INTERPRETER: VIGNOBLE SYLVESTER

DANIEL JEAN-LOUIS                 ATTORNEY:
                                  Gordon W. Spencer, Esq.

### JUDGMENT IN A CRIMINAL CASE

THE DEFENDANT PLED GUILTY ON COUNT 1 OF THE INFORMATION.

ACCORDINGLY, THE DEFENDANT IS ADJUDGED GUILTY OF SUCH COUNT(S), WHICH
INVOLVED THE FOLLOWING OFFENSES:

| TITLE & SECTION | DESCRIPTION OF CHARGES | COUNT |
|---|---|---|
| 18 U.S.C. §371 | CONSPIRACY TO COMMIT BANK FRAUD | 1 |

DATE OFFENSE CONCLUDED: 9/17/99    COUNTS TO BE DISMISSED: NONE

THE DEFENDANT IS SENTENCED AS PROVIDED IN PAGES 2 THROUGH 6 OF THIS
JUDGMENT.  THE SENTENCE IS IMPOSED PURSUANT TO THE SENTENCING REFORM
ACT OF 1984.

DEFENDANT'S SOC.SEC. NO.          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

DEFENDANT'S DATE OF BIRTH:        05/20/69

DATE SENTENCE IMPOSED:            11/15/00

DEFENDANT'S RESIDENCE ADDRESS:    703 Chauncey Street, 2nd floor
                                  Brooklyn, NY 11207

DEFENDANT'S MAILING ADDRESS:      SAME

U.S.M. NO.:                       23152-038

DATED: NOVEMBER 15, 2000          Hon. Douglas P. Woodlock
                                  U.S. District Judge

DOCKETED
DATE 11/28/00
INITIALS CCM

DEFENDANT: DANIEL JEAN-LOUIS        PAGE 2 OF 6
CRIMINAL NO.: 00-10234-DPW (001)

<u>IMPRISONMENT</u>

THE DEFENDANT IS HEREBY COMMITTED TO THE CUSTODY OF THE UNITED STATES
BUREAU OF PRISONS TO BE IMPRISONED FOR A TERM OF:

<u>0 MONTHS</u>

_____THE COURT MAKES THE FOLLOWING RECOMMENDATION TO THE BUREAU OF PRISONS:


_____THE DEFENDANT IS REMANDED TO THE CUSTODY OF THE UNITED STATES MARSHAL.

_____THE DEFENDANT SHALL SURRENDER TO THE UNITED STATES MARSHAL FOR THIS DISTRICT
        AT AM/PM ON _____.

_____AS NOTIFIED BY THE UNITED STATES MARSHAL.

_____THE DEFENDANT SHALL SURRENDER FOR SERVICE OF SENTENCE AT THE INSTITUTION
        DESIGNATED BY THE BUREAU OF PRISONS,

        _____BEFORE 2 PM ON_____.


        _____AS NOTIFIED BY THE UNITED STATES MARSHAL.

        _____AS NOTIFIED BY THE PROBATION OFFICE.

RETURN

I HAVE EXECUTED THIS JUDGMENT AS FOLLOWS: _____

_____

_____
_____


DEFENDANT DELIVERED ON_____TO_____

AT_____WITH A CERTIFIED COPY OF THIS JUDGMENT.


                                    _____
                                    UNITED STATES MARSHAL

                                    BY:_____
                                        DEPUTY MARSHAL

DEFENDANT: DANIEL JEAN-LOUIS              PAGE 3 OF 6
CRIMINAL NO.: 00-10234-DPW (001)

### FINES, SPECIAL ASSESSMENTS, RESTITUTION

--IT IS ORDERED THAT THE DEFENDANT SHALL PAY A SPECIAL ASSESSMENT OF
$100 ON COUNT 1.  THE SPECIAL ASSESSMENT SHALL BE PAID IMMEDIATELY.

--NO FINE IS IMPOSED.

--THE DEFENDANT SHALL PAY $12,869.01 IN RESTITUTION IMMEDIATELY OR
ACCORDING TO A PAYMENT SCHEDULE TO BE ESTABLISHED BY THE PROBATION
OFFICER AND APPROVED BY THE COURT.  THE RESTITUTION SHALL BE PAID BY
THE DEFENDANT JOINTLY AND SEVERALLY WITH RICHARDSON RHAU, WHO WAS
CONVICTED IN A RELATED CASE.  PAYMENT SHALL BE TO THE CLERK, U.S.
DISTRICT COURT, FOR TRANSFER TO CITIZENS BANK, AS FOLLOWS:

1) $12,869.01
   C/O Mr. Bert Oliveira
   Regional Investigations Manager
   Citizens Bank
   55 Court Street, 3rd floor
   Boston, MA 02108

### FORFEITURE

The defendant shall forfeit money and property as follows: NONE

DEFENDANT: DANIEL JEAN-LOUIS            PAGE 4 OF 6
CRIMINAL NO.: 00-10234-DPW (001)

## PROBATION

**THE DEFENDANT IS HEREBY PLACED ON PROBATION FOR A TERM OF THREE (3) YEARS.**

### STANDARD CONDITIONS OF PROBATION

1. the defendant shall not leave the judicial district without permission of the court or probation officer;
2. the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3. the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4. the defendant shall support his or her dependents and meet other family responsibilities;
5. the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6. the defendant shall notify the probation officer within 72 hours of any change in residence or employment;
7. the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
8. the defendant shall not frequent places where controlled substances are illegally sold, used, distributed or administered;
9. the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10. the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11. the defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12. the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without permission of the court;
13. as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: DANIEL JEAN-LOUIS                PAGE 5 OF 6
CRIMINAL NO.: 00-10234-DPW (001)

## SPECIAL CONDITIONS OF PROBATION

WHILE ON PROBATION:

1. THE DEFENDANT SHALL NOT COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME.

2. THE DEFENDANT SHALL COMPLY WITH THE STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS COURT (SET FORTH IN THIS JUDGMENT).

3. THE DEFENDANT SHALL NOT POSSESS A FIREARM OR OTHER DANGEROUS WEAPON.

4. THE DEFENDANT SHALL REFRAIN FROM USE OF UNLAWFUL CONTROLLED SUBSTANCES.

5. THE DEFENDANT SHALL PAY THE BALANCE OF THE RESTITUTION IMMEDIATELY OR ACCORDING TO A COURT ORDERED REPAYMENT SCHEDULE ESTABLISHED BY THE PROBATION OFFICE.

6. THE DEFENDANT SHALL SUBMIT TO DRUG TESTING AS DIRECTED BY THE PROBATION OFFICER.

7. THE DEFENDANT IS PROHIBITED FROM INCURRING NEW CREDIT CHARGES OR OPENING ADDITIONAL LINES OF CREDIT WITHOUT THE APPROVAL OF THE PROBATION OFFICER UNLESS THE DEFENDANT IS IN COMPLIANCE WITH THE PAYMENT SCHEDULE.

8. THE DEFENDANT SHALL PROVIDE THE PROBATION OFFICER WITH ANY REQUESTED FINANCIAL INFORMATION.

9. THE DEFENDANT SHALL NOTIFY THE UNITED STATES ATTORNEY FOR THE DISTRICT WITHIN 10 DAYS OF ANY CHANGE OF MAILING OR RESIDENCE ADDRESS THAT OCCURS WHILE ANY PORTION OF THE RESTITUTION REMAINS UNPAID.

10. FOR THE FIRST 2 YEARS OF PROBATION, THE DEFENDANT IS TO COMPLETE 250 HOURS OF COMMUNITY SERVICE PER YEAR AT AN AGENCY APPROVED BY THE PROBATION OFFICER.

11. IF DEPORTED, THE DEFENDANT SHALL LEAVE THE UNITED STATES AND SHALL NOT RETURN WITHOUT PRIOR PERMISSION OF THE UNITED STATES ATTORNEY GENERAL.

DEFENDANT: DANIEL JEAN-LOUIS          PAGE 6 OF 6
CRIMINAL NO.: 00-10234-DPW (001)


### STATEMENT OF REASONS

____THE COURT ADOPTS THE FACTUAL FINDINGS AND GUIDELINE APPLICATION
IN THE PRESENTENCE REPORT.

                              OR

 X  THE COURT ADOPTS THE FACTUAL FINDINGS AND GUIDELINE APPLICATION
IN THE PRESENTENCE REPORT EXCEPT:  (see attachment if necessary):

Paragraph 56 is modified to reflect defendant's physical therapy
treatment.

GUIDELINE RANGE DETERMINED BY THE COURT:

        TOTAL OFFENSE LEVEL:            5

        CRIMINAL HISTORY CATEGORY:      I

        IMPRISONMENT RANGE:             0 TO 6 months

        SUPERVISED RELEASE:             2 to 3 years

        FINE RANGE:                     $250 to $5,000


____Fine is waived or is below the guideline range, because of the
defendant's inability to pay.

        RESTITUTION:                    $12,869.01

  X  The sentence is within the guideline range, that range does not
exceed 24 months, and the court finds no reason to depart from the
sentence called for by application of the guidelines.

                              OR
____The sentence is within the guideline range, that range exceeds 24
months, and the sentence is imposed for the following reason(s):

                              OR
The sentence departs from the guideline range

____upon motion of the government, as a result of defendant's
substantial assistance.

____for the following reason(s):

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.                                              CRIMINAL NO. 00-10234-DPW

DANIEL JEAN-LOUIS

## NOTICE TO DEFENDANT OF APPEAL RIGHTS

WOODLOCK, D.J.

A sentencing hearing was held on NOVEMBER 15, 2000. The defendant is hereby notified of the right to appeal within 10 days of Entry of Judgment. Fed.R.App.P.4(b).

The defendant and defense counsel are directed to First Circuit Local Rule 12(b), providing that an attorney who has represented a defendant in a criminal case in the District Court will be responsible for representing the defendant on appeal until the attorney is relieved of such duty by the Court of Appeals. Detailed procedures for withdrawal in criminal cases are found in First Circuit Local Rule 46.6.

BY THE COURT,

NOVEMBER 15, 2000                          *Rebecca Greenbey*
                                            Deputy Clerk

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

        V.                  CRIMINAL NO.  00-10234-DPW (001)

DANIEL JEAN-LOUIS         ATTORNEY:
                        Gordon W. Spencer, Esq.

                        INTERPRETER: Emmy Harrison

### JUDGMENT IN A CRIMINAL CASE
(FOR REVOCATION OF PROBATION OR SUPERVISED RELEASE)
(FOR OFFENSES COMMITTED ON OR AFTER NOVEMBER 1, 1987)

THE DEFENDANT STIPULATED TO, AND THE COURT FOUND DEFENDANT IN
VIOLATION OF, CONDITIONS OF THE TERM OF PROBATION, WHICH INVOLVED THE
FOLLOWING VIOLATIONS:

| VIOLATION NUMBER | NATURE OF VIOLATION | DATE VIOLATION OCCURRED |
|---|---|---|
| 1 | Failure to Follow the Probation Officer's Instructions and Failure to Report | 12/7/00-<br>1/18/01 |

VIOLATION DISMISSED:  none

THE DEFENDANT IS SENTENCED AS PROVIDED IN PAGES 2 THROUGH 4 OF THIS
JUDGMENT.  THE SENTENCE IS IMPOSED PURSUANT TO THE SENTENCING REFORM
ACT OF 1984.

DEFENDANT'S SOC.SEC. NO.      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

DEFENDANT'S DATE OF BIRTH:    5/20/69

DATE SENTENCE IMPOSED:      6/4/01

DEFENDANT'S RESIDENCE ADDRESS:  703 Chauncey Street, 2nd floor
                                Brooklyn, NY 11207

DEFENDANT'S MAILING ADDRESS:    same as above

U.S.M. NO.:                23152-038

DATED: June 4, 2001        Hon. Douglas P. Woodlock
                          U.S. District Judge



DOCKETED    (27)

DEFENDANT: DANIEL JEAN-LOUIS             **PAGE 2 OF 4**
CRIMINAL NO.: 00-10234-DPW (001)

## IMPRISONMENT

    THE DEFENDANT IS HEREBY COMMITTED TO THE CUSTODY OF THE UNITED STATES BUREAU OF PRISONS TO BE IMPRISONED FOR A TERM OF:

### TIME SERVED

The defendant is sentenced to time served from May 14, 2001 to June 4, 2001. (22 days).


_____THE COURT MAKES THE FOLLOWING RECOMMENDATION TO THE BUREAU OF PRISONS:


_____THE DEFENDANT IS REMANDED TO THE CUSTODY OF THE UNITED STATES MARSHAL.

_____THE DEFENDANT SHALL SURRENDER TO THE UNITED STATES MARSHAL FOR THIS DISTRICT
    AT AM/PM ON _____.

_____AS NOTIFIED BY THE UNITED STATES MARSHAL.

_____THE DEFENDANT IS RELEASED ON CONDITIONS OF RELEASE AND SHALL SURRENDER FOR
    SERVICE OF SENTENCE AT THE PLACE OF COMMUNITY CONFINEMENT, AS DIRECTED BY
    THE BUREAU OF PRISONS.

      _____BEFORE 2 PM ON_____.

      _____AS NOTIFIED BY THE UNITED STATES MARSHAL.

      _____AS NOTIFIED BY THE PROBATION OFFICE.

### RETURN

I HAVE EXECUTED THIS JUDGMENT AS FOLLOWS: _____


_____
_____
_____

DEFENDANT DELIVERED ON_____ TO _____

AT_____WITH A CERTIFIED COPY OF THIS JUDGMENT.

                  _____
                  UNITED STATES MARSHAL

                  BY:_____
                    DEPUTY MARSHAL

DEFENDANT: DANIEL JEAN-LOUIS                  PAGE 3 OF 4
CRIMINAL NO.: 00-10234-DPW (001)

### SUPERVISED RELEASE

THE DEFENDANT IS PLACED ON THREE (3) YEARS OF SUPERVISED RELEASE.
CONDITIONS OF PROBATION PREVIOUSLY SET ARE REIMPOSED AS
CONDITIONS OF SUPERVISED RELEASE, WITH MODIFICATIONS AS SET FORTH
HEREIN.

### STANDARD CONDITIONS OF PROBATION

1.  the defendant shall not leave the judicial district without permission of the
court or probation officer;
2.  the defendant shall report to the probation officer as directed by the court
or probation officer and shall submit a truthful and complete written report
within the first five days of each month;
3.  the defendant shall answer truthfully all inquiries by the probation officer
and follow the instructions of the probation officer.
4.  the defendant shall support his or her dependents and meet other family
responsibilities;
5.  the defendant shall work regularly at a lawful occupation unless excused by
the probation officer for schooling, training, or other acceptable reasons;
6.  the defendant shall notify the probation officer within 72 hours of any
change in residence or employment;
7.  the defendant shall refrain from excessive use of alcohol and shall not
purchase, possess, use, distribute, or administer any narcotic or other
controlled substance, or any paraphernalia related to such substances, except as
prescribed by a physician;
8.  the defendant shall not frequent places where controlled substances are
illegally sold, used, distributed or administered;
9.  the defendant shall not associate with any persons engaged in criminal
activity, and shall not associate with any person convicted of a felony unless
granted permission to do so by the probation officer;
10. the defendant shall permit a probation officer to visit him or her at any
time at home or elsewhere and shall permit confiscation of any contraband
observed in plain view by the probation officer;
11. the defendant shall notify the probation officer within 72 hours of being
arrested or questioned by a law enforcement officer;
12. the defendant shall not enter into any agreement to act as an informer or a
special agent of a law enforcement agency without permission of the court;
13. as directed by the probation officer, the defendant shall notify third
parties of risks that may be occasioned by the defendant's criminal record or
personal history or characteristics, and shall permit the probation officer to
make such notifications and to confirm the defendant's compliance with such
notification requirement.

DEFENDANT: DANIEL JEAN-LOUIS            PAGE 4 OF 4
CRIMINAL NO.: 00-10234-DPW (001)
                SPECIAL CONDITIONS OF SUPERVISED RELEASE

1. THE DEFENDANT SHALL NOT COMMIT ANY FEDERAL, STATE, OR LOCAL CRIME.

2. THE DEFENDANT SHALL COMPLY WITH THE STANDARD CONDITIONS THAT HAVE
BEEN ADOPTED BY THIS COURT (SET FORTH IN THIS JUDGMENT).

3. THE DEFENDANT SHALL NOT POSSESS A FIREARM OR OTHER DANGEROUS
WEAPON.

4. THE DEFENDANT SHALL NOT USE ANY UNLAWFUL CONTROLLED SUBSTANCES.

5. THE DEFENDANT SHALL PAY $12,869.01 IN RESTITUTION IMMEDIATELY OR
ACCORDING TO A PAYMENT SCHEDULE TO BE ESTABLISHED BY THE PROBATION
OFFICER AND APPROVED BY THE COURT.  THE RESTITUTION SHALL BE PAID BY
THE DEFENDANT JOINTLY AND SEVERALLY WITH RICHARDSON RHAU, WHO WAS
CONVICTED IN A RELATED CASE.  PAYMENT SHALL BE TO THE CLERK, U.S.
DISTRICT COURT, FOR TRANSFER TO CITIZENS BANK.

6. THE DEFENDANT SHALL SUBMIT TO DRUG TESTING AS DIRECTED BY THE
PROBATION OFFICER.

7. THE DEFENDANT IS PROHIBITED FROM INCURRING NEW CREDIT CHARGES OR
OPENING ADDITIONAL LINES OF CREDIT WITHOUT THE APPROVAL OF THE
PROBATION OFFICER UNLESS THE DEFENDANT IS IN COMPLIANCE WITH THE
PAYMENT SCHEDULE.

8. THE DEFENDANT SHALL PROVIDE THE PROBATION OFFICER WITH ANY
REQUESTED FINANCIAL INFORMATION.

9. THE DEFENDANT SHALL NOTIFY THE UNITED STATES ATTORNEY FOR THE
DISTRICT WITHIN 10 DAYS OF ANY CHANGE OF MAILING OR RESIDENCE ADDRESS
THAT OCCURS WHILE ANY PORTION OF THE RESTITUTION REMAINS UNPAID.

10. AFTER COMPLETION OF HOME DETENTION WITH ELECTRONIC MONITORING,
THE DEFENDANT IS TO COMPLETE 250 HOURS OF COMMUNITY SERVICE PER YEAR
AT AN AGENCY APPROVED BY THE PROBATION OFFICER.

11. IF DEPORTED, THE DEFENDANT SHALL LEAVE THE UNITED STATES AND
SHALL NOT RETURN WITHOUT PRIOR PERMISSION OF THE UNITED STATES
ATTORNEY GENERAL.

12. THE DEFENDANT SHALL SERVE 6 MONTHS OF SUPERVISED RELEASE IN HOME
DETENTION WITH ELECTRONIC MONITORING.  THE DEFENDANT SHALL PAY THE
COSTS OF ELECTRONIC MONITORING OF $4.25 PER DAY.

13. THE DEFENDANT SHALL PAY THE $100 SPECIAL ASSESSMENT FORTHWITH.

## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.                    CRIMINAL NO. 00-10234-DPW

DANIEL JEAN-LOUIS

### NOTICE TO DEFENDANT OF APPEAL RIGHTS

WOODLOCK, D.J.

Judgment of Revocation in the above entitled matter was imposed on JUNE 4, 2001. The defendant is hereby notified of the right to appeal within 10 days of Entry of Judgment. Fed.R.App.P.4(b).

The defendant and defense counsel are directed to First Circuit Local Rule 12(b), providing that an attorney who has represented a defendant in a criminal case in the District Court will be responsible for representing the defendant on appeal until the attorney is relieved of such duty by the Court of Appeals. Detailed procedures for withdrawal in criminal cases are found in First Circuit Local Rule 46.6.

BY THE COURT,

JUNE 4, 2001

*Rebecca Greenly*

Deputy Clerk

**EXHIBIT F**

AO 245D (Rev. 3/01)  Sheet 1 - Judgment in a Criminal Case for Revocations - D Massachusetts (09/02)

# United States District Court
## District of Massachusetts

UNITED STATES OF AMERICA
v.

**DANIEL JEAN-LOUIS**

**JUDGMENT IN A CRIMINAL CASE**
(For **Revocation** of Probation or Supervised Release)
(For Offenses Committed On or After November 1, 1987)

Case Number: **1:  00  CR  10234    - 001 - DPW**

Gordon W. Spencer, Esq.
Defendant's Attorney

## THE DEFENDANT:

[x]  admitted guilt to violation of condition(s) _____ of the term of supervision.
[ ]  was found in violation of condition(s) _____ after denial of guilt.

Accordingly, the court has adjudicated that the defendant is guilty of the following violation(s):

| Violation Number | Nature of Violation | Date Violation Concluded |
|---|---|---|
| Special #5 | Failure to pay Restitution pursuant to court approved repayment schedule | 06/01/04 |
| Special #10 | Failure to perform community service as required | 06/01/04 |

[ ] See continuation page

The defendant is sentenced as provided in pages 2 through 4 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]  The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

   IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district with 30 days of any change of name, residence, or maling address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Defendant's Soc. Sec. No.: XXX-XX-4134

Defendant's Date of Birth: XX/XX/1969

Defendant's USM No.: 23152-038

Defendant's Residence Address:
  703 Chauncey Street, 2nd floor
  Brooklyn, New York 11207

Defendant's Mailing Address:
  Same as above

06/30/04
Date of Imposition of Judgment

The Honorable Douglas P. Woodlock
Signature of Judicial Officer
/s/ Douglas P. Woodlock

Judge, U.S. District Court
Name & Title of Judicial Officer

6/30/04
Date

AO 240D (Rev. 3/01) Judgment in a Criminal Case for Revocations: Sheet 2 - Imprisonment

CASE NUMBER:   **1:  00  CR 10234   - 001 - DPW**                           Judgment - Page 2 of 4
DEFENDANT:        DANIEL JEAN-LOUIS

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of      3  month(s)

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district.
　　☐ at _____    on _____
　　☐ as notified by the United States Marshal.

☒ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
　　☒ before 12:00 pm  on 8/6/04
　　☐ as notified by the United States Marshal.
　　☐ as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.


                                                        _____
                                                        UNITED STATES MARSHAL


                                                  By    _____
                                                        Deputy U.S.  Marshal

AO 245D (Rev. 3/01) Sheet 3 - Supervised Release

CASE NUMBER:   **1: 00 CR 10234   - 001 - DPW**         Judgment - Page 3 of 4
DEFENDANT:

DANIEL JEAN-LOUIS

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of    33   month(s)

☒ See continuation page

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13,1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐     The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check if applicable.)

☒     The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated above).

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependants and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Continuation Page - Supervised Release/Probation

| | |
|---|---|
| CASE NUMBER: | **1:  00  CR  10234  - 001 - DPW** |
| DEFENDANT: | DANIEL JEAN-LOUIS |

Judgment - Page 4 of 4

### Continuation of Conditions of ☒Supervised Release ☐Probation

1. THE DEFENDANT SHALL NOT COMMIT ANY FEDERAL, STATE, OR LOCAL CRIME.

2. THE DEFENDANT SHALL COMPLY WITH THE STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS COURT (SET FORTH IN THIS JUDGMENT).

3. THE DEFENDANT SHALL NOT POSSESS A FIREARM OR OTHER DANGEROUS WEAPON.

4. THE DEFENDANT SHALL NOT USE ANY UNLAWFUL CONTROLLED SUBSTANCES.

5. THE DEFENDANT SHALL PAY $12,869.01 IN RESTITUTION IMMEDIATELY OR ACCORDING TO A PAYMENT SCHEDULE TO BE ESTABLISHED BY THE PROBATION OFFICER AND APPROVED BY THE COURT.  THE RESTITUTION SHALL BE PAID BY THE DEFENDANT JOINTLY AND SEVERALLY WITH RICHARDSON RHAU, WHO WAS CONVICTED IN A RELATED CASE.  PAYMENT SHALL BE TO THE CLERK, U.S. DISTRICT COURT, FOR TRANSFER TO CITIZENS BANK.  THE DEFENDANT SHALL PAY AT LEAST $100  PER MONTH IN RESTITUTION.

6. THE DEFENDANT SHALL PAY THE $100 SPECIAL ASSESSMENT FORTHWITH.

7. THE DEFENDANT SHALL SUBMIT TO DRUG TESTING AS DIRECTED BY THE PROBATION OFFICER.

8. THE DEFENDANT IS PROHIBITED FROM INCURRING NEW CREDIT CHARGES OR OPENING ADDITIONAL LINES OF CREDIT WITHOUT THE APPROVAL OF THE PROBATION OFFICER UNLESS THE DEFENDANT IS IN COMPLIANCE WITH THE PAYMENT SCHEDULE.

9. THE DEFENDANT SHALL PROVIDE THE PROBATION OFFICER WITH ANY REQUESTED FINANCIAL INFORMATION.

10. THE DEFENDANT SHALL NOTIFY THE UNITED STATES ATTORNEY FOR THE DISTRICT WITHIN 10 DAYS OF ANY CHANGE OF MAILING OR RESIDENCE ADDRESS THAT OCCURS WHILE ANY PORTION OF THE RESTITUTION REMAINS UNPAID.

11. THE DEFENDANT IS TO COMPLETE 250 HOURS OF COMMUNITY SERVICE PER YEAR AT AN AGENCY APPROVED BY THE PROBATION OFFICER.  THE DEFENDANT SHALL PERFORM AT LEAST 20 HOURS OF COMMUNITY SERVICE EACH MONTH.

12. IF DEPORTED, THE DEFENDANT SHALL LEAVE THE UNITED STATES AND SHALL NOT RETURN WITHOUT PRIOR PERMISSION OF THE UNITED STATES ATTORNEY GENERAL.